IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| PATRICIA ALVEY, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil Action |
| ) | No. 10-4161-CV-C-JCE-SSA |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| Defendant. ) | |

## ORDER

This case involves the appeal of a final decision of the Secretary denying plaintiff's application for supplemental security income (SSI) benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq., and her application for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401 et seq. Pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g), this Court may review the final decisions of the Secretary. Pending before the Court at this time are plaintiff's brief, defendant's reply brief in support of the administrative decision, and plaintiff's reply. For the reasons stated herein, the Secretary's decision will be affirmed.

Standard of Review

Judicial review of disability determination is limited to whether there is substantial evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g); e.g., Rappoport v. Sullivan, 942 F.2d 1320, 1322 (8th Cir. 1991). Substantial evidence is "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). Thus, if it is possible to draw two inconsistent positions from the evidence and one

position represents the Agency's findings, the Court must affirm the decision. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1). Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990). In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment. Id. A disabling impairment is one which precludes engaging "in any substantial gainful activity [for at least twelve months] by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A finding of "not disabled" will be made if a claimant does not "have any impairment or combination of impairments which significantly limit [the claimant's] physical or mental ability to do basic work activities. . . ." 20 C.F.R. § 404.1520.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well-settled. The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

## Discussion

Plaintiff was 43 years old at the time of the hearing before the ALJ. Plaintiff has a GED education, and took some medical courses after high school. She alleges disability due to depression, borderline personality disorder, and anxiety. She has varied past relevant work as a

phlebotomist, cook, bartender, circuit board assembler, and assembler.

The ALJ found that plaintiff had not engaged in substantial gainful activity since May 30, 2005, the alleged onset date. It was his finding that plaintiff had the severe impairments of possible bipolar affective disorder; borderline personality disorder; major depressive disorder; and a previous ganglion on her right wrist. The ALJ concluded that she did not have an impairment or combination of impairments that met or equaled a listed impairment. It was also the ALJ's finding that plaintiff was partially credible. He found that she could perform her past relevant work as a bench assembler. Therefore, the ALJ found that plaintiff was not under a disability as defined by the Act.

The ALJ also relied on the opinion of a vocational expert, who reviewed plaintiff's work history and the limitations the ALJ found credible, which were that plaintiff could perform simple tasks, and relate to coworkers and supervisors in small numbers in a low stress setting. The ALJ and vocational expert carefully focused on simple jobs that are easier to learn and easier to perform. According to the testimony of the vocational expert, plaintiff's inconsistent work record consisted of jobs that lasted two or three months at the most, and with little or no transferability of skills. The expert testified that if there were a bench assembly job available that was simple, routine and repetitive, she could perform it.

At the hearing before the ALJ, plaintiff testified that she was 43 years old, and that she obtained her GED after completing the eleventh grade. She also had some training after high school, and worked for one year as a phlebotomist. Before that, she worked for about a year as a circuit board assembler. She was not working at the time of the hearing. Since her alleged onset date, May 10, 2005, she did try to go back to work part-time at the Marriott as a bartender. She worked at that job for two-and-a-half months. She had problems because there was too much

contact with people, and her emotional problems were interfering with her ability to do her job. She was fired from that job. Most of her jobs have been of two to four months duration. Plaintiff testified that this is because she got stressed and did not want to be around people. If she did get hired back at a job like bartending, she thought she would have anxiety attacks because of being around people, and she can't concentrate.

In terms of her depression, plaintiff testified that she sleeps a lot. She also has crying spells, and sometimes has them a couple of times a day. They last about 15 minutes or more. They just occur. She had to take a break during the hearing because she got upset, although she testified later that the attack was not a bad one. Sometimes, when she has one, she can't breathe, she shakes, gets hot flashes, and is dizzy. She has mild attacks about once a day. She has had bad anxiety attacks where she thought she would have to go to the hospital because she thought she was having a heart attack. Plaintiff testified that she definitely did not do things with friends or family, go to church, or to groups. She isolates herself, and goes out of the house maybe once a week. She goes to the grocery store, and maybe once a month she gets her nails done. This is the one thing she likes to do. Most of the time, she does not answer the phone when it rings. She has problems focusing and concentrating, although she is able to watch a television show all the way through. She has more problems remembering things. It was plaintiff's testimony that she is bulimic, but she doesn't know why. She has not told a doctor about this.

Plaintiff testified that she has a hard time sleeping, although she might go to bed at 10:00 at night, and get up about 11:00 a.m. Her mind races all during the day and when she is in bed. She feels sleep deprived as a result. She believes this is from her depression. She tries not to lie down during the day because then she won't sleep at night.

Plaintiff testified that she had tried to commit suicide in May of 2008. She also tried in

2006. She does not handle stress well, and is very moody. She takes Effexor, Xanax, Trazodone, and Lamictal. It was her testimony that she takes the medication as prescribed. She did not complain of side effects, and the medications seem to help by lessening her symptoms.

Regarding daily activities, it was plaintiff's testimony that she watches TV during the day, and sometimes is on the computer, playing solitaire or reading her email. She stated that she usually does her household chores, although it takes her a long time because she stops and then goes back to them. She does drive, but has some problems with anger or road rage. She goes to the grocery store about once a week, and does some cooking. She will travel to Illinois to see her daughters.

Plaintiff sees a psychiatrist about every two or three months; she did see a counselor, but has not done so since she moved. She would really like to see a therapist again. She takes anti-depressant medications, and thinks she has less suicidal thoughts and that she sleeps better. Her psychiatrist advised her to get out more and do more with her children, and she enjoys doing that.

Plaintiff contends that the ALJ erred in his credibility analysis, and did not properly weigh the opinion of her treating sources. She specifically contends that the ALJ failed to take her borderline personality disorder into account, failed to properly consider the opinions of Dr. Ahmed and Nurse Branham, and erred in his credibility determination.

The ALJ found that plaintiff's mental impairments, singly and in combination, did not meet or equal the criteria of Listing 12.04 under paragraph B. He found that in terms of activities of daily living, she had a moderate restriction, and that "[h]er daily activities are not limited to the extent one would expect, given the complaints of disabling mental health symptoms and limitations." [Tr. 11]. He noted the fact that she testified she spent the day playing on the computer, was able to clean her house, shop for groceries, "and maintain her hobby of taking care

of her nails." [Id.]. The ALJ noted that plaintiff appeared unkempt at the hearing, except for her nails.

He also found that in terms of social functioning, she also had only moderate difficulties. He noted that her medical records indicate that she has had difficulties with boyfriends, which have preceded her hospitalizations. It was his opinion that her medical records did not support a finding of significant limitations to her social functioning. The ALJ found that plaintiff had moderate difficulties with regard to concentration, persistence or pace. He found that her complaint regarding poor memory was not supported by the medical records, as the records noted her flow of thought was logical and no significant memory limitations were stated. "During the times the claimant was hospitalized she had noted limitations in this area, but that could be attributed to alcohol intake. As the hospitalizations progressed, the records not [sic] she regained her ability to think logically (Exhibit 7F3)." [Id.].

It was the finding of the ALJ that the records did not show that she experienced episodes of decompensation that had been of extended duration. Because he found that she did not have at least two marked limitations or one marked and repeated episodes of decompensation of extended duration, the ALJ found that the paragraph B criteria were not satisfied. He also found that the criteria of paragraph C were not met.

The ALJ found that plaintiff had the residual functional capacity ["RFC"] to perform a full range of work at all exertional levels with some non-exertional limitations. Specifically, he found that she had moderate limitations in her ability to understand and remember detailed instructions; to carry out detailed instructions; to maintain attention and concentration for extended periods; to get along with coworkers and peers; to accept criticism; and to respond appropriately to changes in the work setting. The ALJ reviewed the medical records, including those of Dr. Early and Dr.

Ahmed, as well as hospital records and opinions of third parties. Regarding the hospitalization in October of 2006, the records indicate that plaintiff was voluntarily admitted for a suicide gesture that involved an overdose of Seroquel due to anxiety, including a fight with her boyfriend. The mental status examination revealed that she was overly dramatic, depressed and anxious, although she denied any suicidal thoughts, and insight and judgment were deemed to be normal. Dr. Ahmed noted that plaintiff's memory was intact, she had fair insight and judgment, poor concentration, low energy, apathy, and low stress tolerance. He diagnosed her with major depressive disorder. Opinions of third parties indicated that plaintiff has problems with sleeping, problems with going out, but that she does some household chores, takes care of her grandson and son, and shops for necessities. It was also noted that she has problems with concentration, memory, and handling stress. In making his RFC finding, the ALJ noted that the records did not indicate that she required significant treatment for her mental impairments for the first year after her alleged onset date of May 30, 2005, and that her first hospitalization for mental impairments was not until October 15, 2006. "The lack of documentation of treatment during this lengthy period both undermines the claimant's complaints of disabling mental impairments during this time and her overall credibility." [Tr. 13].

Plaintiff began seeing Dr. Ahmed in December of 2006. His treatment notes indicated that in January of 2007, she reported that she was still depressed, but that she felt more motivated and felt that she had the energy to take online courses and a daytime job. She indicated that she had significant problems with her teenage son. Later that month, the clinical notes indicated that she felt Effexor was helping with her mood, concentration, and focusing. She continued to have problems with stress because of her son. She was assessed with severe problems with her family, and moderate problems with social network. There are notations in her records indicating

problems with some medications and changes in her medication regimen. Plaintiff was anxious, angry, tearful, and depressed at various times. On March 30, 2007, Dr. Ahmed completed a Medical Source Statement in which he opined that plaintiff was suffering from a major depressive disorder, which she had had since her teens. The doctor stated that in 2005, her symptoms got worse, although the record indicates that he had not begun seeing her until 2006. He stated that she had a very low energy level, poor concentration, apathy, poor sleep, and lack of interest. Regarding any restrictions of daily living, he stated that she had very low frustration and stress tolerance, and difficulty concentrating. He stated the same regarding difficulties in maintaining social functioning. Regarding deficiencies of concentration, persistence or place, the doctor indicated that she had "poor concentration-Rumination." [Tr. 244]. Finally, regarding any episodes of decompensation in the workplace, he stated that she was fired from several jobs in the past because of "very depressed mood, high anxiety, inability to tolerate stress-poor concentration." [Id.]. At the time he completed the Medical Source Statement, the doctor had seen plaintiff for less than four months.

The records also indicate that plaintiff was hospitalized again in 2008 after another fight with her boyfriend; the hospitalization was preceded by consuming alcohol and being intoxicated. She called the police and expressed suicidal thoughts. When examined, her behavior was noted to be manipulative and evasive. She was referred to a substance abuse group, where her condition approved. She was compliant with medication, her mood improved, and her thoughts were logical.

Regarding the ALJ's credibility determination, the ALJ must consider the subjective aspects of plaintiff's complaints pursuant to the agency's regulations, 20 C.F.R. §§ 404.1529 and 416.929, and with the framework set forth in Polaski. As long as the ALJ examines the Polaski

factors and cites inconsistencies between plaintiff's subjective complaints and the record as a whole, the ALJ's credibility determination is entitled to deference. Goff v. Barnhart, 421 F.3d 785, 791-92 (8th Cir. 2005). Plaintiff contends that the ALJ erred by focusing on questionable behavior as a sign of lack of credibility, rather than recognizing the behavior as symptoms of a severe mental impairment.

The Court has carefully reviewed the ALJ's credibility findings, which include the fact that he observed that plaintiff did not have treatment for any alleged mental impairment from the alleged onset date of May of 2005 until October of 2006. He concluded that the "lack of documentation of treatment during this lengthy period both undermines the claimant's complaints of disabling mental impairments during this time and her overall credibility." [Tr. 13]. He also found that there were no records from any treating physician that "found or imposed any long-term, significant, and adverse mental [] limitations on [her] functional capacity as a result of her impairments." [Tr. 15]. He found her daily activities inconsistent with her allegations of a disabling mental impairment, including the fact that she played on the computer, cleaned her house, shopped for groceries, and took care of her nails. He noted, moreover, that she answered questions at the hearing in a "clear and logical manner. The capacity for these activities of daily living and to answer in this fashion undermines her allegations of significant mental health symptoms." [Id.]. Additionally, the ALJ noted that plaintiff was at times non-compliant with medication and used alcohol, and that it had been suggested that she exaggerated her symptoms and was overly dramatic. Plaintiff argues that manipulative behavior and substance abuse are symptoms of a borderline personality disorder, and that the ALJ erred in his credibility determination by not recognizing her behavior as symptomatic of the disorder. The record as a whole does not suggest that the ALJ focused only on evidence of substance abuse or manipulative

behavior to completely discredit her.  Rather, he covered the gamut of factors under Polaski in finding her less than credible, including a lack of treatment until more than a year after her alleged onset date, the lack of a doctor's statement that her impairments were of such severity that she could not work, and her daily activities.  The ALJ considered the Polaski factors, assessing plaintiff's credibility based on the record as a whole.  The ALJ considered the medical records during the relevant time period, her statements, her subjective complaints, and functional limitations.  Based on the record as a whole, the Court finds that the ALJ's credibility determination was sufficient, and is entitled to deference.

Turning to the weight given to the opinion of the treating physician, while a treating physician's opinions are ordinarily to be given substantial weight, they must be supported by medically acceptable clinical or diagnostic data, and must be consistent with substantial evidence in the record.  Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999); Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004).  The ALJ may reject the opinion of any medical expert if it is inconsistent with the medical record as a whole.  See Bentley v. Shalala, 52 F.3d 784, 787 (8th Cir. 1995).  In Prosch v. Apfel, 201 F.3d 1010 (8th Cir. 2000),  the Eighth Circuit Court of Appeals discussed the weight to be given to the opinions of treating physicians, holding that the opinion of a treating physician is accorded special deference under the Social Security regulations.  The Court has, however, upheld an ALJ's decision to discount or even disregard the opinion of a treating physician where other medical assessments "are supported by better or more thorough medical evidence,"Rogers v. Chater, 118 F.3d 600, 602 (8th Cir. 1997), or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.  Cruze v. Chater, 85 F.3d 1320, 1324-25 (8th Cir. 1996).

Plaintiff contends that the ALJ erred in not discussing the specific weight he gave to Dr.

Ahmed's opinion. A careful review of the record indicates, however, that the ALJ reviewed the medical records as a whole, as well as plaintiff's testimony and demeanor, in reaching his decision. While he did not make a specific reference to the weight afforded to Dr. Ahmed's opinion, the record indicates that he did review and discuss the doctor's treatment notes, and his mental assessment. It should be noted that the doctor did not state that plaintiff's mental impairments would preclude her from work. The ALJ took Dr. Ahmed's opinion into consideration in making his RFC determination. For example, the doctor stated that plaintiff would have difficultly concentrating; the ALJ found that she had moderate limitations with concentration, persistence and pace, and incorporated that limitation in his RFC finding. Similarly, Dr. Ahmed opined that plaintiff had a very low tolerance for stress. In this RFC assessment, the ALJ included moderate limitations in her ability to get along with peers and co-workers, accept criticism, and respond appropriately to changes in the work setting. Additionally, the ALJ noted that "the medical records do not document that any treating physician has ever found or imposed any long-term, significant, and adverse mental or physical limitations on the claimant's functional capacity as a result of her impairments." [Tr. 15]. In the case of Dr. Ahmed, his medical treatment notes indicate that, after he first began seeing plaintiff, she reported that she was still depressed, but that she felt more energy and more motivated to take online classes and seek daytime employment. She also told him that her medications were helping with her mood, concentration and focus. While there is evidence in the record of several hospitalizations, these appear to involve situational stress and depression based on breaking up with her boyfriends, stress with her children and a death in the family, and the use of alcohol. The record supports a finding that plaintiff has severe mental impairments, which require the use of anti-depressant and anti-anxiety medication. When she is compliant with medication, it helps her condition, according

to her remarks to her doctor and to her own testimony at the hearing.

Because the ALJ's reliance on some, but not all, of Dr. Ahmed's opinions was appropriate and consistent with substantial evidence in the record, the ALJ's alleged failure to more explicitly discuss those opinions is, at most, an arguable deficiency in opinion-writing and not grounds for remand. See Draper v. Barnhart, 425 F.3d 1127. 1130 (8th Cir. 2005); Johnson v. Apfel, 240 F.3d 1145, 1149 (8th Cir. 2001)("Any arguable deficiency . . . in the ALJ's opinion-writing technique does not require this Court to set aside a finding that is supported by substantial evidence."). Under the same reasoning, regarding the weight given to the opinion of Nurse Practitioner Branham, the Court has carefully reviewed the record, and finds that the ALJ properly assessed the medical records as a whole, and adopted the limitations he found credible.   After careful review, the Court finds that there is substantial evidence in the record as a whole to support the ALJ's decision regarding the weight given to treating sources, including Dr. Ahmed and Nurse Branham.

Based on the foregoing, the Court finds that there is substantial evidence in the record to support the ALJ's decision that plaintiff did not suffer from a disabling mental impairment and that she was not disabled under the Act.  Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir.  2006). Accordingly, the decision of the Secretary should be affirmed.

It is hereby

ORDERED that the decision of the Secretary should be, and it is hereby, affirmed.

    /s/ James C. England
    JAMES C. ENGLAND
    United States Magistrate Judge

Date:    3/9/12